UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANTAE LAVONDA BENTON,

    Plaintiff,

v.                                               Case No. 8:17-cv-2843-T-AAS

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration,

    Defendant.
_____/

## ORDER

Shantae Lavonda Benton seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), administrative record, pleadings, and joint memorandum the parties submitted, the Commissioner's decision is **AFFIRMED**.

I.    PROCEDURAL HISTORY

Ms. Benton applied for SSI and DIB because of a disability she claims began on October 6, 2014. (Tr. 204–13). Disability examiners denied Ms. Benton's applications initially and after reconsideration. (Tr. 62–77, 82–103). Ms. Denton then requested a hearing before an ALJ, who found Ms. Benton not disabled. (Tr. 14–23, 127–31).

1

Ms. Benton then requested the Appeals Council review the ALJ's decision. (Tr. 195). The Appeals Council granted Ms. Benton's request and issued its own decision. (Tr. 1–9). The Appeals Council also found Ms. Benton not disabled, and that decision became the final decision of the Commissioner. (*Id.*). Ms. Benton now seeks judicial review of the Commissioner's final decision. (Doc. 1).

## II.  NATURE OF DISABILITY CLAIM

### A.  Background

Ms. Benton was thirty-six years old when she submitted her SSI and DIB applications and thirty-seven years old when the ALJ held the hearing. (Tr. 37, 204, 206). Ms. Benton has an eighth-grade education and attends classes to obtain a General Education Diploma (GED). (Tr. 39, 43). She claimed disability because of arthritis in multiple joints and degenerative disc disease. (Tr. 62, 70).

### B.  Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] she is not disabled. §§ 404.1520(b), 416.920(b). Second, if a claimant does not have an impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, then she does not have a severe impairment and is not disabled. §§ 404.1520(c), 416.920(c); *see McDaniel v.*

---

[1] If the ALJ determines that the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. §§ 404.1572, 416.910.

*Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment included in the Listings, she is not disabled. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent her from performing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing other work that exists in the national economy, then she is not disabled. §§ 404.1520(g), 416.920(g).

The ALJ here determined Ms. Benton engaged in no substantial gainful activity since her alleged onset date. (Tr. 16). The ALJ found Ms. Benton has a severe impairment: degenerative disc disease with canal stenosis. (*Id.*). Nonetheless, the ALJ found Ms. Benton's impairments or combination of impairments fails to meet or medically equal the severity of an impairment included in the Listings. (Tr. 18).

The ALJ then found Ms. Benton has the following RFC:

[Ms. Benton] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) pushing, pulling, lifting, or carry twenty pounds occasionally, or 1/3 of an eight hour work day, and ten pounds frequently or 2/3 of an eight hour work day, except that sitting for an eight hour day. She can stand up to 4 hours and walk up to 2 hours per eight hour work day. Other than lifting, carrying, pushing and pulling, she can do all arm activities without limitation (reach, handle, finger, feel, push, pull). She occasionally can perform all

---
[3] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. §§ 404.1545, 416.945(a).

3

postural activities (climb ramps and stairs, balance, stoop, kneel, crouch and crawl) except that she can never climb ladders or scaffolding and unprotected heights. She frequently can operate motor vehicles, and work around unprotected heights, vibrations, extreme temperatures (heat/cold), humidity, wetness, dust, odors, fumes, and pulmonary irritants.

(Tr. 19). Based on these findings, the ALJ determined Ms. Benton could perform past relevant work as a telemarketer. (Tr. 22). As a result, the ALJ found Ms. Benton not disabled. (*Id.*).

Following Ms. Benton's request, the Appeals Council reviewed the ALJ's decision. (Tr. 1–9). The Appeals Council agreed with the ALJ findings from steps one through three of her sequential analysis: Ms. Benton engaged in no substantial activity since the alleged onset date; Ms. Benton has severe degenerative disc disease with canal stenosis; and Ms. Benton's severe impairment fails to meet an impairment in the Listings. (Tr. 5).

The Appeals Council adopted the ALJ's RFC determination. (*Id.*). But the ALJ declined to adopt the ALJ's finding that Ms. Benton could return to her past relevant work as a telemarketer. (*Id.*). Instead, the Appeals Council found Ms. Benton could perform other jobs that exist in significant numbers in the national economy, specifically as a ticket seller, parking-lot cashier, and toll collector. (Tr. 5–6). The Appeals Council therefore found Ms. Benton not disabled from the alleged onset date through the date of the ALJ's decision. (Tr. 7).

4

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Phillips*, 357 F.3d at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

B.  **Issues on Appeal**

Ms. Benton argues the ALJ's decision should be remanded for two reasons. (Doc. 16, pp. 18–41). Ms. Benton first argues the ALJ's RFC determination is not supported by substantial evidence. (*Id.* at 18–26). Ms. Benton next argues the ALJ erred when she considered Ms. Benton's statements about the severity of her impairments. (Doc. 16, pp. 35–38).

1.  RFC Determination

Ms. Benton argues the ALJ's findings about Ms. Benton's limitations (i.e., Ms. Benton's RFC) are unsupported by substantial evidence. (*Id.* at 18–26). Ms. Benton focuses her argument on (1) whether ALJ properly considered evidence about Ms. Benton's back pain and (2) whether the ALJ properly considered the medical opinion from Dr. Charles Liu. (*Id.*).

*a.  Evidence about Ms. Benton's Limitations*

Ms. Benton argues the ALJ erred when she relied on two specific findings. (*Id.*). First, Ms. Benton argues the ALJ erred when she relied on her finding that Ms. Benton "lacks true disc herniation." (*Id.*; Tr. 19). Second, Ms. Benton argues the ALJ erred when she found no clinical signs or symptoms accompanied Ms. Benton's MRI evidence showing she has stenosis. (Doc. 16, p. 19; Tr. 19).

Ms. Benton argues medical evidence shows the severity of Ms. Benton's back pain and cites findings for support. (Doc. 16, pp. 20–23). A CT scan of Ms. Benton's abdomen revealed severe degenerative disc disease in her lumbar spine and "mild bilateral hip degenerative joint disease." (Tr. 395–96). An impression from a CT scan

of Ms. Benton's lumbar spine stated her degenerative disc and facet disease "is greater than stated age." (Tr. 389). Dr. Shaukat Chowdhari observed decreased range of motion and tenderness in Ms. Benton's musculoskeletal system, as well as other deficiencies. (Tr. 338). Dr. Hasan Mousli noted Ms. Benton's history included back pain that radiated to her bilateral extremities. (Tr. 455). Dr. Mousli also observed Ms. Benton had "irregular gait, tiptoe abnormal, and heel walk abnormal." (Tr. 456).

Kenley Pierre-Louis, a nurse practitioner, observed pain with range of motion in Ms. Benton's back, and Pierre-Louis assessed lower back pain. (Tr. 347). A different CT scan of Ms. Benton's lumbar spine revealed "multilevel neural foraminal stenosis most significant at the L3-L4, L4-L5, and L5-S1 levels." (Tr. 580–81). At an emergency-room visit, Dr. John Conboy observed Ms. Benton's range of motion in her back was "painful with all movement." (Tr. 576). And Ms. Benton cites other medical evidence noting degenerative disc changes and stenosis in her lumber spine, low back pain, and painful range of motion in her back. (Tr. 355, 385, 774–75). According to Ms. Benton, the evidence she cites demonstrates the ALJ's findings about Ms. Benton's limitations are unsupported by substantial evidence. (Doc. 16, p. 22–23).

The Commissioner argues Ms. Benton fails to show her degenerative disc disease prevents her from working. (*Id.* at 28–31). According to the Commissioner, no imaging-test results show Ms. Benton has disc herniation or other major deformity. (*Id.*). And the Commissioner argues the ALJ relied on substantial

7

evidence in her RFC determination. (Doc. 16, pp. 28–30) (footnotes and citations omitted). So, the Commissioner concludes remand is inappropriate. (*Id.* at 31).

At step four of the sequential evaluation, the ALJ determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most she can perform in a work setting despite her impairments. §§ 404.1545, 416.945(a); *Phillips*, 357 F.3d at 1238. The ALJ must determine the claimant's RFC using all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238. Substantial evidence must support the ALJ's RFC determination. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

Substantial evidence supports the ALJ's RFC determination in this case. When determining the limitations Ms. Benton's back pain imposes on her, the ALJ considered all relevant evidence. The ALJ cited Dr. Liu's opinion, in which Dr. Liu found Ms. Benton could lift and carry twenty pounds occasionally. (Tr. 19, 746). Dr. Liu noted Ms. Benton has severe back pain "secondary to degenerative disc disease and spinal stenosis" but no trouble with ambulation. (Tr. 19, 746).

The ALJ considered medical notes from Dr. Mousli, in which Dr. Mousli found no major spinal stenosis and that Ms. Benton had no need for surgery. (Tr. 19, 465). The ALJ also considered how Dr. Mousli observed normal strength and full range of motion in all areas of her musculoskeletal system. (Tr. 19, 509). The ALJ also considered evidence, in which Ms. Benton reported no difficulty walking. (Tr. 19, 492). The ALJ cited Dr. Liu's observation that multiple examinations of Ms. Benton's

upper extremities were normal. (Tr. 20, 748). This evidence the ALJ considered constitutes substantial evidence.

Many records Ms. Benton cites to support her argument include notes supporting the ALJ's RFC determination. For example, Ms. Benton cites Dr. Mousli's note, in which he observed Ms. Benton display irregular gait. (Doc. 16, p. 20; Tr. 456). But, in that same note, Dr. Mousli observed full range of motion in all areas of Ms. Benton's musculoskeletal system. (Tr. 456). The ALJ has the duty to weigh contradictory pieces of medical evidence. *See Moore*, 405 F.3d 1208, 1213 (citations omitted) (affirming ALJ's RFC determination despite claimant citing evidence that undermined the ALJ's finding). The ALJ's decision demonstrates she considered all relevant evidence—including contradictory evidence—when determining Ms. Benton's RFC, and substantial evidence supports the ALJ's determination. Remand on this issue is therefore inappropriate.

### b. *Dr. Liu's Opinion*

Ms. Benton argues the ALJ erred when she considered Dr. Liu's opinion. (Doc. 16, pp. 23–26). Ms. Benton specifically takes issue with Dr. Liu's review of medical evidence. (*Id.*). For example, Ms. Benton argues Dr. Liu's finding that Ms. Benton has no trouble with ambulation is contradicted by Dr. Mousli's notes indicating Ms. Benton had trouble with ambulation. (*Id.* at 23) (citations omitted). According to Ms. Benton, Dr. Liu's opinion is not supported by substantial evidence because of inconsistencies between his findings and findings in the medical record. (*Id.* at 25).

To support her argument that Dr. Liu's opinion is not supported by substantial evidence, Ms. Benton cites many notes from Dr. Mousli and other providers. (Doc. 16, pp. 23–26). During his treatment of Ms. Benton, Dr. Mousli repeatedly noted she had limited ambulation and slow, irregular gait. (Tr. 439, 447–48, 452, 455, 500, 504, 508, 513, 517, 522). Dr. Mousli performed epidural steroid injections on Ms. Benton's lumbar spine because of her back pain. (Tr. 490, 492).

Milcah Caculitan, a nurse practitioner, assessed Ms. Benton and noted lower back pain radiating to her legs. (Tr. 501). Caculitan also noted Ms. Benton complained about back pain, which was due to weight issues and "chronic DJD and spasm." (Tr. 524). Dr. Mousli noted that Ms. Benton complained her back-spasm pain was an "8/10." (Tr. 455). Dr. Mousli also assessed neck pain that radiated to Ms. Benton's arms and caused headaches. (Tr. 440). According to Ms. Benton, the evidence demonstrates Dr. Liu erred in his medical assessment; so, the ALJ similarly erred when she considered Dr. Liu's opinion. (Doc. 16, p. 25).

The Commissioner argues the ALJ properly considered Dr. Liu's opinion. (*Id.* at 31–35). According to the Commissioner, the ALJ properly gave weight to portions of Dr. Liu's opinion consistent with medical evidence in the record. (*Id.* at 32–33). The Commissioner points out that no doctor noted Ms. Benton using an assistive device to ambulate; rather, providers observed normal gait. (*Id.* at 33) (citations omitted). The Commissioner also argues the evidence Dr. Liu reviewed supports his determination that Ms. Benton could ambulate independently. (*Id.* at 33) (citation omitted). And the Commissioner cites other evidence supporting Dr. Liu's

determination that Ms. Benton could perform a reduced range of light work; so, the Commissioner concludes that remand is inappropriate. (Doc. 16, pp. 33–35).

The ALJ must state with particularity the weight given to different medical opinions and her reasons for doing so. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ may reject any medical opinion if evidence supports a contrary finding, but she must still articulate reasons for assigning little weight. *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986). Provided her decision does not broadly reject a claim for Social Security benefits, the ALJ need not refer to every piece of evidence. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). Although it is unnecessary to refer to every piece of evidence, the ALJ must consider all available evidence and articulate the weight given to probative evidence. *Id.*; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ considers how consistent a medical opinion is with the record when determining how much weight to assign that opinion. 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4). The ALJ may reject any medical opinion when evidence supports a different conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (citations omitted).

Substantial evidence supports the ALJ's consideration of Dr. Liu's opinion. The ALJ first considered how Dr. Liu found Ms. Benton has severe low back pain secondary to degenerative disc disease and spinal stenosis. (Tr. 17, 746). The ALJ later assigned great weight to Dr. Liu's opinion that Ms. Benton's impairment fails to meet an impairment in the Listings and that she could ambulate independently

11

despite her chronic back pain. (Tr. 18, 754). The ALJ found Dr. Liu's opinion consistent with medical evidence. (Tr. 18).

Substantial evidence supports the ALJ's decision to assign great weight to Dr. Liu's opinion that Ms. Benton's impairment does not meet an impairment in the Listings and she can ambulate independently. The ALJ considered Dr. Chowdhari's opinion, in which he found Ms. Benton had normal gait and used no "cervical collar, cane, crutch or walker, and does not appear to need one." (Tr. 21. 338, 341). The ALJ considered physical therapist Louis Greenwald's notes, in which he repeatedly observed improvements in Ms. Benton's condition and listed her long-term goal: "Ambulation is improved to prior level of function." (Tr. 20, 596). And the ALJ considered how Dr. Mousli and nurse practitioner Caculitan also repeatedly noted Ms. Benton had no need for surgery and she had no major spinal stenosis—despite observing limited ambulation. (Tr. 18–19, 464–65, 500–01, 508–09, 522–24). These findings and opinions the ALJ considered constitute substantial evidence supporting her decision to assign great weight to Dr. Liu's opinion that Ms. Benton's impairment does not meet an impairment in the Listings and she can ambulate independently.

Dr. Liu found that medical evidence shows "no impairment of use of hands" and normal upper-extremity examinations. (Tr. 748). Dr. Liu's finding is consistent with the medical evidence. Dr. Mousli and nurse practitioner Caculitan repeatedly observed full range of motion in all areas of Ms. Benton's musculoskeletal system, including in Ms. Benton's hand and wrists. (Tr. 464, 500, 509). This evidence is

consistent with Dr. Liu's finding that Ms. Benton has no impairment in her hands and had normal upper-extremity examinations.

* * *

Substantial evidence supports the ALJ's decision to assign great weight to Dr. Liu's finding that Ms. Benton's impairment does not meet an impairment in the Listings and she can ambulate independently. And Dr. Liu's finding that Ms. Benton has no impairment in her hands and had normal upper-extremity examinations is consistent with the medical evidence. Remand on this issue is therefore inappropriate.

2. <u>Statements about Severity of Impairments</u>

Ms. Benton argues the ALJ erred when she found Ms. Benton's statements about the severity of her impairments inconsistent with medical evidence. (Doc. 16, pp. 35–38). According to Ms. Benton, the ALJ relied on findings unrelated to Ms. Benton's pain and not properly part of the pain analysis. (*Id.* at 35) (citation omitted). Ms. Benton argues the ALJ's conclusion about a "disconnect between Ms. Benton's complaints and the record" is inaccurate. (*Id.* at 36).

Ms. Benton cites medical evidence to support her claim about the severity of her impairments. (*Id.*). She cites multiple medical notes from different providers documenting Ms. Benton's back pain. (Tr. 346–47, 352, 354, 612–13). Ms. Benton also cites medical evidence showing she went to emergency rooms multiple times because of her low-back pain. (Tr. 385, 532, 554, 575, 646, 650). According to Ms.

13

Benton, this medical evidence shows no disconnect between her treatment and her statements about the severity of her impairments. (Doc. 16, p. 36).

Ms. Benton also argues her treatment is consistent with her statements about the severity of her impairment. (*Id.* at 36–38). Ms. Benton cites Dr. Mousli's notes, in which he repeatedly observed that her pain was severe. (*Id.* at 37) (citations omitted). Ms. Benton also points out Dr. Mousli treated her pain with narcotic mediations, injections, and physical therapy. (*Id.*) (citations omitted). So, Ms. Benton concludes the ALJ erred when she found Ms. Benton's statements about the severity of her impairment inconsistent with medical evidence. (*Id.* at 37–38).

The Commissioner argues the ALJ properly determined Ms. Benton's statements about the severity of her impairment were inconsistent with medical evidence. (*Id.* at 38–41). The Commissioner cites records showing Ms. Benton walked normally despite irregular gait, had full range of motion and strength in all extremities, and required no drastic treatment for her condition. (*Id.* at 39) (footnotes and citations omitted). The Commissioner also argues the ALJ properly considered Ms. Benton's daily activities. (*Id.* at 40) (citations omitted).

To establish disability based on testimony about pain and other symptoms, the claimant must show the following: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). If the ALJ rejects subjective testimony, she must provide

adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

An ALJ may consider daily activities at step four of the sequential analysis. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (stating the ALJ must base the RFC assessment on reports of daily activities, among other things).

At the hearing, Ms. Benton testified she needs help getting dressed and picking things up off the floor when dropped. (Tr. 47). Ms. Benton also testified she cannot work because of pain located in her "whole body." (*Id.*). She described difficulties she has sitting, standing, and walking, and she described side effects she suffers due to medication she takes for her pain. (Tr. 47, 50). The medical evidence also shows Ms. Benton consistently reported limitations because of her back pain. (*See, e.g.*, Tr. 337) (reporting to Dr. Chowdhari that she had difficulties completing daily activities because of her chronic back pain).

The ALJ determined Ms. Benton's impairment could reasonably be expected to cause her alleged symptoms. (Tr. 21). But the ALJ determined Ms. Benton's statements about the severity of her impairment were not entirely consistent with medical evidence. (*Id.*).

Substantial evidence supports finding Ms. Benton's statements about the severity of her impairment inconsistent with medical evidence. The ALJ considered medical notes, including notes from Dr. Kulmeet Kundlas, showing Ms. Benton was

well-developed and had normal gait. (Tr. 21, 338, 613, 620). The ALJ also considered how records from Ms. Benton's emergency-room visits show that her main complaints dealt with pelvic organs and abdominal pain. (Tr. 21, 581, 719). Further, the ALJ considered medical notes, in which observable signs, like reflexes, revealed less problems than signs subject to "self-report," like tenderness. (Tr. 21, 509).

The ALJ also considered Ms. Benton's testimony. (Tr. 21). Ms. Benton testified she has no problem grooming herself. (Tr. 40). She prepares meals, cleans her apartment, folds clothes, drives, shops for groceries, and spends time with friends and family. (Tr. 40–41). Ms. Benton testified she could manage her finances and she takes her daughter to school and helps her with homework. (Tr. 42). Ms. Benton watches television, reads, takes classes to obtain her GED, and attends church every Sunday. (Tr. 43–44).

The medical evidence the ALJ cited and Ms. Benton's daily activities constitutes substantial evidence. Remand on this issue is therefore inappropriate.

## IV. CONCLUSION

Substantial evidence supports the ALJ's RFC determination. Specifically, the ALJ properly considered evidence about limitations Ms. Benton has because of her back pain. And the ALJ properly considered Dr. Liu's opinion. Substantial evidence also supports the ALJ finding Ms. Benton's statements about the severity of her impairment inconsistent with medical evidence.

The Commissioner's decision is therefore **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court must enter final judgment for the Commissioner

consistent with 42 U.S.C. Sections 405(g) and 1383(c)(3).

**ORDERED** in Tampa, Florida, on March 25, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge